UNIVERSITY OF FLORIDA RESEARCH FOUNDATION, INC. and Rapid Mobile Technologies, Inc., Plaintiffs.

v.

MOTOROLA MOBILITY LLC, Defendant.

Case No. 0:13–CV–61120–KMM.

United States District Court, S.D. Florida.

Signed Feb. 19, 2014.

Cory Meltzer, Meltzer & Mathis, Boca Raton, FL, Steve Lundwall, Gary J. Fischman, Fischman & Lundwall, PLLC, Houston, TX, Jennifer Marie Meksraitis, Meltzer & Meksraitis, LLC, Tampa, FL, for Plaintiffs.

Daniel J. Schwartz, Matthew A. Werber, Vincent M. Smolczynski, Seyfarth Shaw, LLP, Chicago, IL, James Anthony Gale, Samuel Abraham Lewis, Feldman Gale PA, Miami, FL, Matthew B. Lowrie, Robert J. Silverman, Foley & Lardner, LLP, Boston, MA, Andrew Richard Cheslock, Foley, Lardner LLP, Washington, DC, for Defendant.

## ORDER ON CLAIM CONSTRUCTION

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon the Markman Hearing held before the Court on January 30, 2014, relative to United States Patent Number 7,231,330 ("the Patent"). Plaintiffs University of Florida Research Foundation, Inc. and Rapid Mobile Technologies, Inc. filed a claim construction brief (ECF No. 60). Defendant Motorola Mobility LLC responded (ECF No. 69) and Plaintiffs replied (ECF No. 71). UPON CONSIDERATION of the Patent, the prosecution history, the Parties' briefs, the evidence presented at the Markman Hearing, the arguments of counsel, the pertinent portions of the record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. STANDARD OF REVIEW

 It is the Court's role to construe the claims of the disputed patent. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–90, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The Court principally looks to the claims made in the patent, specification, and prosecution history. *Alza Corp. v. Myland Laboratories, Inc.*, 391 F.3d 1365, 1370 (Fed.Cir.2004); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). These sources are considered intrinsic evidence. *Vitronics Corp.*, 90 F.3d at 1582.

 In approaching claim construction, the words of the claim are to be given their ordinary and customary meaning as understood by one with ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir.2005); *see also Elekta Instrument S.A. v. O.U.R. Scientific Intern., Inc.*, 214 F.3d 1302, 1307 (Fed.Cir.2000) ("[a]bsent an express intent to impart a novel meaning, claim terms take on their ordinary meaning."). "[C]laims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir.2006). Otherwise, characteristics described in a claim would be considered superfluous rendering the scope of the patent ambiguous and leaving examiners to guess about which claim language is deemed necessary and which is nonlimiting elaboration. *Id.* Additionally, courts must pay particular attention to the patentees own definition of the claim terms, which control. *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1341 (Fed.Cir.2003)

("a patentee may be his or her own lexicographer by defining the claim terms.").

With respect to the relationship between the specification and the claims, the Federal Circuit has explained that claims must be read in view of the specification and that the specification may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The Federal Circuit has cautioned, however, that "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed.Cir.1998).

■■ In addition to intrinsic evidence, courts may rely on extrinsic evidence, which includes expert and inventor testimony as well as dictionaries and technical treatises. *Markman,* 52 F.3d at 980. Extrinsic evidence, however, is viewed as less reliable than the patent and its prosecution history in determining how to read claim terms. *Phillips,* 415 F.3d at 1318. With respect to the use of dictionaries, courts may consider dictionary definitions to help understand and define claim terms. *Id.*

## II. CLAIM CONSTRUCTION

The Patent, which contains twenty-one claims, concerns a method and system to model and test mobile network components and configurations in a lab environment with respect to real world scenarios. *See* Compl. (ECF No. 1), at ¶ 11; Patent, Compl. Ex. A (ECF No. 1). The Court construes the asserted claims at issue in the patent in suit as follows:

(a) **"wireless"** (all claims)

**"Without wires or cables, and only through air or vacuum."**

■ The Court adopts Defendant's construction and rejects Plaintiffs' construc-

tion of the term as "[o]f or relating to communications using standardized communication protocols used in the mobile network communications industry." Resp., at 3; Br., at 4. Plaintiffs contend that the term encompasses communication with or without a wire and refers to "the format, the procedures, that the industry, mobile phone makers and the infrastructure of the network, use to communicate with each other." Hr'g Tr. (ECF No. 93), at 13, 21.

The plain meaning of the term "wireless" is "without a wire." Dictionaries define "wireless" as "without wires" (Webster's) and "[a]ny system of transmitting information and receiving information without wires" (Newton Telecom Dictionary). *Id.* at 77. It would be an unnatural use of language to refer to a communication sent over a wire as a "wireless communication." *Id.* at 79. Plaintiffs' construction is inconsistent with the essence and distinguishing characteristic of wireless communication, which is mobility and the ability to move around unhindered. *Id.* at 74.

This Court further finds that Plaintiffs' construction is circular and unhelpful because it does not actually define the claim. *See id.* at 72. Plaintiffs contend that "wireless" refers to "wireless communication protocol[s] . . ." Br., at 4. Plaintiffs are in effect using the word "wireless" to define "wireless." The use of circular reasoning constitutes improper claim construction. *See ACTV, Inc. v. Walt Disney Co.,* 346 F.3d 1082, 1090 (Fed.Cir.2003).

Additionally, this Court finds that Plaintiffs' construction is at odds with the specification, which distinguishes between a wired and a wireless portion of the proposed system. *See* Hr'g Tr., at 67; Patent, at 16. This distinction would be unnecessary if Plaintiffs' construction were to be accepted. In addition, the Patent uti-

lizes both the terms "wireless communication protocol" and "wirelessly communicate," so it is logical that these terms have different meanings. *See* Hr'g Tr., at 68–91; Patent, at 15, 18.

Ultimately, Plaintiffs have confused a characteristic of wireless communication with the definition of wireless communication. It is likely true that effective wireless communication requires wireless communication protocols. Hr'g Tr., at 75. Similarly, it is also likely true that effective wireless communication requires a battery. *Id.* But it does not follow that wireless communications *means* communication with a battery. *Id.* at 75, 89. Likewise, it does not follow that wireless communication means communication with wireless communication protocols. *See id.*

(b) **"mobile node configured to wirelessly communicate"/"mobile node wirelessly communicates" (claims 1, 11 and 20)**

**"A device that sends and receives signals wirelessly."**

█ This Court adopts Defendant's construction and rejects Plaintiffs' construction of "[a] device built to send and receive wireless communication protocols." Resp., at 3; Br., at 4. This Court rejects a construction of "wireless communication" premised on "wireless communication protocols." This Court has explicated the reasons behind this decision in the section of this Order pertaining to the term "wireless." *See supra* pp. 1377–78.

(c) **"wireless access point" (claims 5, 6, and 14)**

**"Device that communicates a wireless protocol signal wirelessly."**

█ This Court adopts Defendant's construction and rejects Plaintiffs' construction of a "[d]evice or program that converts a wireless protocol signal (no matter how transmitted) into a format suitable for a wired protocol network, and vice-a-versa." Resp., at 3; Br., at 13. As

this Court has construed wireless communication as communication without a wire, it follows that "wireless access point" refers to the communication of a wireless signal. *See supra* pp. 1377–78. Plaintiffs' construction is focused on expanding the definition of "wireless" to include wired communication and therefore raises similar issues to those discussed in the section of this Order pertaining to term "wireless." *See* Resp., at 3 n. 5; *supra* pp. 1377–78.

(d) **"wireless network nodes"/"wireless nodes" (all claims)**

**"An element of a network that sends and receives signals wirelessly."**

█ This Court adopts Defendant's construction and rejects Plaintiffs' construction of "[a] device that has an access point (for interfacing with wireless signal protocols) and a router function (for interfacing with the packet data network) and which bridges the wireless communication protocol signals from the mobile devices with the wired packet data network in the emulated system." Resp., at 17; Br., at 12. This Court finds Plaintiffs' construction to be impractical and unwieldy, as well as inconsistent with this Court's construction of "wireless." *See supra* pp. 1377–78.

In addition, Plaintiffs have violated the doctrine of claim differentiation, which holds that a dependent claim with a limitation gives rise to a presumption that the limitation is not found in the independent claim. *See* Resp., at 17; *SanDisk Corp. v. Kingston Tech. Co., Inc.,* 695 F.3d 1348, 1361 (Fed.Cir.2012). Plaintiffs' construction utilizes the term "access point." Resp., at 17–18. However, dependent claims 5 and 14 recite a "wireless network node" as having an "access point." *Id.;* Patent, at 19. Accordingly, Plaintiffs cannot define the independent claim using the limitations found in the dependent claims, as to do so would render Patent elements

superfluous. *See* Resp., at 17–18; *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed.Cir.2006).

(e) **"a packet-based wired communications network"** (claims 1, 11, and 20) **"A communications network in which packets of data are transmitted through wires or cables."**

■ This Court adopts Defendant's construction and rejects Plaintiffs' construction of "[a] data network used in the mobile communications industry that duplicates, reorders and monitors packets of data and transmits such information formatted for a wired protocol network to and from cellular base-stations (arranged in geographical cells) across high distance, high capacity transmission lines (e.g. T1/E1 lines) and/or microwave links." Resp., at 16; Br., at 12. As an initial matter, this Court finds that Plaintiffs' construction is unwieldy, impractical, and inconsistent with the plain and ordinary meaning of the claim. In addition, Plaintiffs' construction includes elements that do not appear in the specification, but are rather derived from extrinsic sources such as inventor reports and deposition testimony. Resp., at 16; Hr'g Tr., at 126–27. Phrases such as "T1/E1 lines" and "microwave links" simply have no foundation in the Patent. *See id.;* Patent. Claim construction must derive from the claims themselves. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–15 (Fed.Cir.2005).

(f) **"routing device"** (claims 5 and 15) **"A device that redirects a data signal from its input to its output."**

■ This Court adopts Defendant's construction and rejects Plaintiffs' construction of "[a] hardware or software component that directs packets of data based on the header type of the packets to the proper route or destination." Resp., at 18; Br., at 13. The meaning of "proper route or destination" and "header type" is not evident and these terms are not sup-

ported by the claims or specification. *See* Resp., at 18; Patent.

This Court now turns to the dictionary definitions presented by the Parties. Defendant's construction is supported by reputable sources such as the Authoritative Dictionary of IEEE Standard Terms published by the Institute for Electrical and Electronics Engineers ("the IEEE Dictionary"). Resp., at 18, 18 n. 19. Plaintiffs rely on definitions from sources they describe as a "Computer Encyclopedia" and a "Stanford University Publication." Br., at 15 n. 7. The definitions in these sources do not clearly support Plaintiffs' construction, and in addition Plaintiffs' descriptions of the sources are misleading. *See* Resp., at 18. The "Computer Encyclopedia" is in actuality an Internet publication entitled "Webopedia." Br. Ex. 14 (ECF No. 60–14). The "Stanford University Publication" is in fact a graduate dissertation. Br. Ex. 15 (ECF No. 60–15).

(g) **"attenuator"/"attenuation"** (claims 5, 6, 7, 8, 14. 17, 18, 19, and 21) **"A device that can increase or decrease the level of a signal."**

■ This Court adopts Defendant's construction and rejects Plaintiffs' construction of "[a] device that can change one or more of the characteristics of a wireless signal." Resp., at 19; Br., at 19. Plaintiffs' construction is unduly limiting as an attenuator may operate with respect to any kind of signal, not only wireless signals. Resp., at 19. In addition, while attenuation may alter signal characteristics, that is not synonymous with the meaning of the term, which refers to an alteration of the signal level. Hr'g Tr., at 129. Defendant's construction is supported by reputable technical sources such as the IEEE Dictionary. *See* Resp., at 19 n. 20.

(h) **"antenna"** (claims 5, 10, and 14) **"An electrical device that radiates electromagnetic waves wirelessly."**

■ This Court adopts Defendant's construction and rejects Plaintiffs' construction of "[a]n electrical device that sends and receives radio frequencies." Resp., at 19–20; Br., at 18. This Court finds that the phrase "electromagnetic waves" is more appropriate than the phrase "radio frequencies." Radio waves are a certain frequency of electromagnetic waves and antennas may be used for waves other than radio waves. *See* Hr'g Tr., at 131. Defendant's construction is supported by the IEEE Dictionary, which defines "antenna" using the term "electromagnetic waves." Resp., at 20. Plaintiffs contend that their construction is supported by the American Heritage Dictionary. Br., at 18. However, this dictionary, as submitted by Plaintiffs, clearly defines "antenna" as "[a] metallic apparatus for sending or receiving electromagnetic waves," thereby supporting Defendant's construction. Br. Ex. 17 (ECF No. 60–17).

(i) **"fixedly located"** (claims 1, 11, and 20)

**"Set at a particular location."**

■ The Parties dispute the construction of the term "fixedly located wireless network node[s]." Resp., at 13; Br., at 19. This Court finds that as this Order has separately defined "wireless network node[s]," it is only necessary for this Court to define the term "fixedly located." *See*

*supra* pp. 1378–79. The Court adopts Plaintiffs' proposed construction of the term. *See* Br., at 19–20. This Court finds that the plain meaning of "fixedly located," as supported by dictionary usage, is consistent with Plaintiffs' construction of the term. *Id.*

Defendant has not proposed a construction and argues that "fixedly located" is invalid for indefiniteness and not supported by the specification. Resp., at 13.[1] Defendant's argument is premised on the reading of "fixedly located" in conjunction with Plaintiffs' construction of "wireless." *Id.* at 13–15. Defendant argues that if "wireless" were to encompass the use of wires, "the actual physical and spatial locations [of the nodes] would have no effect on the operation of the system," thereby rending the term "fixedly located" meaningless. *Id.* at 15. Defendant contends that the term need not be found to be indefinite if this Court were to adopt Defendant's construction of "wireless." *Id.* As this Court has adopted Defendant's construction of "wireless," this Court avoids the indefiniteness problem raised by Defendant. *See supra* pp. 1377–78; *Halliburton Energy Services, Inc. v. M–I LLC,* 514 F.3d 1244, 1253 (Fed.Cir.2008) ("where a claim is ambiguous as to its scope we have adopted a narrowing construction when doing so would still serve the notice function of the claims.").[2]

---

1. Plaintiffs have moved to strike Defendant's invalidity defense on the basis that it was not timely disclosed in accordance with this Court's Patent Pretrial Order (ECF No. 5). *See* Mot. to Strike (ECF No. 72); Resp. to Mot. to Strike (ECF No. 78); Reply to Resp. to Mot. to Strike (ECF No 81). While this Court finds that Defendant has committed a procedural error, this Court determines that Defendant has properly raised its indefiniteness defense as an element of the claim construction proceedings. Accordingly, this Court denies Plaintiffs' Motion to Strike.

2. This Court finds that Defendant has raised compelling arguments at the Hearing in this

matter as to the possibility that "fixedly located" can never be defined in the context of the Patent because mobile products such as cell phones can never truly be confined to any particular location, and to do so would defy the essence of wireless products and devices. *See* Hr'g Tr., at 124–25. However, this Court does not have the full benefit of the Parties' briefings on the definition of the term "fixedly located" in the context of Defendant's definition of "wireless." Accordingly, this Court will permit Defendant to renew its arguments as to the term "fixedly located" at the summary judgment stage of this litigation. *See id.* at 125.

## III. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that United States Patent Number 7,231,330 shall be construed in a manner consistent with this Order.